The last argument on the calendar for today is number 21-501, James v. Willia. We'll hear first from the appellant. It looks like time is divided between two counsel. We'll hear first from Mr. Getrajman. Is that right? Yes, Your Honor. Okay, whenever you're ready. Thank you, and may it please the Court, Gregory Getrajman, along with my colleague, Ms. Del Moro, on behalf of the appellants. The appellants are a group of Muslim individuals here asking that this Court reverse and remand the trial court's dismissal of their equal protection and conspiracy claims. I'll first address the equal protection claim, and my colleague will then discuss the conspiracy claims. First, as an initial matter, the State has already conceded that the appellant's equal protection claim does not require allegations of a similarly situated comparator. Mr. Getrajman, if you could proceed. Thank you. Thank you. So I was saying the State has already conceded that appellant's equal protection claim does not require allegations of a similarly situated comparator, and this alone is good reason to reverse and remand the trial court's decision. But despite acknowledging the error, the State argues in the alternative, one, that the appellants did not suffer an injury in fact, and two, that the complaint lends no plausible inference of discriminatory anti-Muslim animus. Can you, Counselor, explain how this case is different from Linda R.S. and its progeny, please? Yes, Your Honor. First, Linda R.S., the holding expressly limits it to a failure to prosecute in the criminal context claim, and as well, those cases did not center on an equal protection discrimination claim. And I think that's the real difference that separates our case from Linda R.S. and Leak and the other cases that follow. Well, what's the injury that you're alleging that the appellees caused your clients? Thank you, Your Honor. The injury here is the discrimination itself, and most circuits throughout... What does that mean? Can you make that a little bit more concrete for me? Yes, Your Honor. The injury is discrimination in that the appellants suffered an invasion of their right to equal protection under the laws. Again, that's not concrete enough for me. That's a legal statement. How were you harmed? I mean, usually it's some kind of, you know, something was broken. I lost money. Something that's a of the laws. How? Because they were Muslim, they didn't report. Well, Your Honor, because the appellants are Muslim individuals, members of the Nation of Islam, the appellees simply decided that they didn't need to report this incident at the mosque desecration. Counselor, is maybe an answer to Judge Park's question, the idea that they couldn't have services, that their religious symbols were desecrated, that their sanctified space was made impure. Are those the kinds of injuries that you are trying to rest much of this on, or is it something different? Yes, Your Honor. And to that, I would just add that they had the right to, when their right to equal protection was violated by the appellee's decision not to report this because they were Muslim. And yes, in addition to all of those things that I would say more stem from the desecration of the mosque itself. But I think here we are really focused on the non-reporting of it. But can we pursue, I think, the difference perhaps between the question that Judge Park is asking you and the comments of Judge Perez is discriminatory treatment on its own, right, is not an injury. In fact, the question is discriminatory treatment to what end, to what effect on you? And Linda RS, in fact, was an equal protection claim, right? I mean, she was claiming that she had been, as a victim, subjected to discriminatory treatment. And the court said, yeah, but not with respect to something that you have standing to complain about, which is the prosecution of another person. And if I understand correctly, one question is, well, the investigation of or however you pronounce his name, who presumably is the one alleged to have trampled on the prayer rugs and whatnot, that's not something that you have, your clients have a cognizable interest in. But maybe there's something else that you have a cognizable interest in. One of my questions was the alleged conspiracy to clean up and destroy the evidence in the synagogue. Did that somehow frustrate your client's ability to pursue an action for damages under 1983 because it destroyed evidence that they would have been able to claim, hey, somebody damaged my synagogue or somebody prevented me from worshiping. And now I can't pursue a damages claim because you would have been able to pursue a damages claim, right? Saying, you damaged my prayer rug, maybe nominal damages because they could get cleaned up pretty quickly. I don't know. But do you see the distinction there? Yes, your honor. And I think really it's they had a right to be protected. What was protected? Right. That's the question. What was the protection? What was being protected? The sanctity of the appellant's mosque. It's really their right to practice their religion, essentially unobstructed them. And who did that in your allegation? Who did that? Who? My understanding is your allegation is that officer Comito was the one who ripped down the flag and stomped on things. At least that's I think your theory or that's what you're Yes, your honor. However, he's not in the case anymore, right? No, he's not, your honor. But so your claims are against, I understand the people who conspired to cover this up, right? Yes, your honor. His colleague officers, essentially because the appellants are Muslim, decided that this justified their decision not to follow DOC's directive and file an unusual incident report for the mosque desecration itself. And I don't want to intrude in the way that you and your co-counsel have divided arguments. So if I'm going into a subject that your co-counsel is planning to talk about, please let me know. And that's fine. But to the extent that we're now only talking about liability of people other than officer Comito. So I think other than the people who actually, the person who actually committed the acts of destruction, people who later engaged in what you allege is a cover-up, can you articulate what you think is the harm that the cover-up had on your clients? Other than just that you wish there had not been a cover-up or you think the cover-up was motivated by some bad reason. What was the cover-up to your clients? Yes, your honor. The harm is that this event should, this, excuse me, the appellee's efforts prevented an investigation from taking place. And that is where the injury is in that they have the right. Why do they have an interest in someone else being disciplined? Why is that not like RS? What is the bad, the good or bad in their life that arises from these officers being disciplined or not disciplined? What is the effect on them of the officers being disciplined or not? In essence, it's there. The effect is that the appellants are then able to practice their religion safely, unobstructed. You know, this investigation is something that's going to, in theory, prevent this from happening again in the future. And then isn't your problem then, if you're relying on a deterrence rationale, right, that if these prison guards are punished by their employer, they or other prison guards will be deterred from ever pulling a trick like this again. Isn't that exactly the rationale that the Supreme Court rejected in RS and saying, well, it's not good enough to say, I'm a victim of a crime. You must prosecute the perpetrator of the crime to deter that person from ever committing a crime like that against me again. Aren't you invoking the same rationale that was rejected in RS? Well, not exactly. And I think broadly, because we're not, we're not seeking the prosecution of these individuals. No, but the deterrence rationale, isn't that the same rationale? I think that the real difference is that the prosecution, and I don't want to use the word prosecution literally because, of course, there's not a criminal context here, which is a big difference from then to RS, but the focus is that the investigation allows them to exercise their right to unobstructed practices of their religion. And I think that the investigation is central in doing so, and that we know the reason we can infer that the reason why this investigation didn't take place was because the appellants were Muslim. And this court has recognized in Tartakov that discrimination itself can be an injury where it perpetuates, I believe, stereotypic and archaic notions of inferiority for those members of disabled class. Okay, thank you, counsel. We'll hear from your co-counsel, Ms. Del Muro. Good morning, your honors. May it please the court. I just want to apologize. Some of this might be a bit repetitive, just because there's been a little bit of overlap in our issues, but I'm here today to discuss our client's conspiracy claims. So the trial court dismissed appellant's conspiracy claims on the grounds that appellant's complaint did not adequately allege an equal protection violation. But as my colleague, Mr. Katradjman, has discussed, appellant's amended complaint does plausibly allege an equal protection violation. So it follows that appellant's 1983 and 1985 section 3 conspiracy claims should be reinstated. It's plausible that the officers agreed to cover up the mosque desecration, specifically because appellants are Muslim. Immediately after the desecration occurred, officers Amato, McCullough, and Willis were all on duty, and they were called to the incident of the desecration. And all of them had an independent duty via DOCS directive to report the incident, but none of them did. Now, it's also plausible that after the officers found out what had happened, they made active efforts to prevent an investigation from ever moving forward. The NOI members specifically asked Sergeant McCullough, for example, to memorialize the damage that had occurred, taking photos, taking a video, and he didn't do it. He refused. Also, officers McCullough and Willis insisted that the NOI members not report the incident. They told them to drop it. We don't want the incident to get blown up, written up. And then, as we discussed earlier, two days after the desecration, the NOI members arrive at the mosque room to see that all evidence of the desecration had been completely cleaned, despite the fact that for the entire day prior, on January 15th, the damage was in the mosque room, and the room was locked. The only person... So, can I ask you? Sure. Is your theory, because, again, I understand Officer Comito is no longer defended in this case, and we're only talking about the remaining prison guards who were involved in the alleged cover-up, right? Is your theory that if Officer A engages in some obviously discriminatory misconduct, and then Officers B through H cover it up, that the discriminatory animus of Officer A is necessarily, at least for purposes of 12b-6, imputable to the remaining defendants? Or is your theory that there are particular allegations, in this case, that show that the conspirators did, in fact, harbor, specifically harbor, some discriminatory animus for their cover-up, that it does not rest solely on an imputation of the animus of Officer A? It's the latter, Your Honor. We included several quotations in our pleadings that we could talk about today about how... Please. Sure. So... One is the KKK statement, right? So, can you... Is there more than that? Well, yes. So, we also have the statement that Sergeant McCullough told the NOI members in an effort to prevent them from reporting the incident, told them that some of the officers were... veterans, and that they were upset over the terrorist attacks that had happened at the Charlie Hedbell offices in Paris, just a week before the desecration occurred. So, what are the reasonable inferences from that statement? Because we have to construe the statement in the light most favorable to the non-moving party, which is your clients. Could you identify, a little bit more specifically, what are the reasonable inferences that you think a jury could draw? I think a jury... I'm sorry, Your Honor. No, go ahead. I think a jury could reasonably conclude that the officers, after discovering the desecration, decided that they were going to violate DOC's policy by not reporting the incident because the NOI members are Muslim. Who cares? Well, actually, could I ask you to be a little bit more specific? Just, you quoted the line, I think it was from McCullough, who said that some of the officers were upset about, I can't remember, the Charlie Hebdell or the Paris attack, or whatever the quote was. I mean, my understanding would be that the one thing, the statement, some of the officers, again, read in the light most favorable to you, could be read to say that more than just Comito, but some, multiple officers, shared some concern about the Paris attacks, and were taking it out on these fellows, which suggests some sort of discriminatory animus on more than one person. Yes. And maybe that's true, maybe that's not. Maybe that's not what he meant, and if that's the evidence of trial, a jury could reject it and say, no, no, he was really just saying Comito. But I assume that your argument is that when he uses the plural, read in the light most favorable to you, we have to assume that there's, that's evidence that more than one person shared Comito's animus, or motivation. Yes. And then could you turn to the question Judge Paris referenced, the KKK loose cannon statement, could you tell us how, if at all, in your view, that matters? Well, officers McCullough and Willis, after they discovered that the NOI members had reported the desecration, went into the cells of the NOI members later that night, pulled them from their cells, and said, just like there are terrorists and lone wolves in Islam, there are loose cannons in the KKK. I think that the statement is important for two reasons. One, because it shows potential racial animus for multiple officers, like we were talking about before. And also, it shows that it's plausible that they were attempting to thwart NOI members' future participation in an investigation of the incident by DOCS. Is maybe an alternate inference, the fact that the KKK was specifically mentioned, and this was Black Muslims, suggests a directness of the animus? Yes. They selected the KKK, they didn't select another organization to be using as a reference for loose cannons that can't be controlled. Is that correct? Correct. Thank you. If there are no further questions, I'd like to discuss the intracorporate conspiracy doctrine. Briefly, please. Okay. We just wanted to say that appellees were very clearly not working within the scope of their employment when the alleged misconduct took place. So, the intracorporate conspiracy doctrine would not preclude appellees from liability for conspiracy here. Many of the appellees' actions specifically deviated from DOCS policy. None of the officers followed the mandates of the unusual incident directive by not reporting the desecration when they all had an individual duty to. DOCS officers also openly admitted that they didn't want the policy. Then, after the appellants were successful in reporting the desecration, Sergeant McCullough and Officer Willis threatened them with racist quotes. The trial court found that the intracorporate conspiracy doctrine here does preclude the appellees from liability for conspiracy because the alleged misconduct took place on a DOCS facility during work hours when the officers were, quote-unquote, carrying out functions for which they were employed. But this finding by the trial court implies that the personal stake exemption to the intracorporate conspiracy doctrine can't apply when a conspiracy takes place at the co-conspirator's place of work during work hours. And this can't really be the case because if it were, the intracorporate conspiracy doctrine would be rendered useless. The doctrine is applicable only when co-conspirators work for a single entity. So, if the exemption doesn't apply at the co-conspirator's place of work while they're at work, it can't be rendered useless. And that's all we have for you today, Your Honors. We're happy to field any further questions. Thank you both. We'll hear from the appellee next. Mr. Ginsburg. Thank you. May it please the court. Although plaintiffs had standing to sue C.O. Camito for vandalizing the mosque room in the first instance, they lack standing to sue the defendants here for allegedly interfering in an allegedly discriminatory way with the subsequent doc's investigation into that vandalism. Plaintiffs styled their claim very narrowly as far as standing is concerned. At page three of their reply brief, they've repeated again today that, quote, discrimination itself is the injury. That makes this case even easier in following from Linda R.S. because that constitutional violation in and of itself is not a cognizable injury in fact in this case. I think Linda R.S. If hypothetically, we were to agree with you that the complaint did not adequately allege injury in fact, but we thought there was a possibility that they could better articulate it. And if we decided this had to go back anyway, based on your concession that district court was incorrect in believing that there had to be a comparator. Is this the situation where the district court would be allowed to consider a motion to amend the complaint to better allege injury in fact, or in your view, is the failure would a failure to allege injury in fact, require dismissal without leave to replete? Your Honor, I think this failure to allege injury in fact, at least as far as the cases that I've dismissal without leave to amend. And I haven't heard plaintiffs today or in their reply brief after we raised the issue in our answering brief, discuss amending the complaint. Well, this was never raised before the district court. I mean, this is all coming up for the first time on appeal, right? Oh, yes. And what I'm saying is, I haven't heard plaint, I didn't hear plaint, didn't read plaintiffs in their reply brief. In this case, after we raised it in our answering brief in this appeal, to discuss the possibility of amendment, nor was amendment requested during their presentation today. I guess my only point is that's not something that the plaintiffs have asked for. And so it's not something procedurally that my clients have thought a lot about. I mean, we'd be happy to read, to dig into that issue more and brief it if the court ends up wanting that. Can you address the question that we've been floating different concepts? Let's say we were to agree with you that if the plaintiffs were alleging that their injury in fact is the failure to investigate the other correctional officers, period. And we were to agree with you that it failed by analogy to Artland R.S. Would there, however, be injury in fact, if they alleged something else and one of the things that we had floated, or maybe I had said, was that they might have had a valid 1983 action against Officer Comito, but that the other officers conspired to destroy the evidence that they would have been able to put forward in support of a claim that could have gotten them damages, perhaps nominal damages, I don't know. But if that were properly alleged, and you may dispute, you may say, look, they never alleged that. But if that were hypothetically alleged, in your view, would that constitute injury in fact for Article 3 purposes? I think that would be, and I noted your question when you asked it to closer to an Article 3 injury in fact. And I guess I also noted though, when you asked plaintiff that, they expressly disavowed it and they said, quote, that the injury in fact is, quote, that this conduct prevented the investigation from taking place, period. So, I mean, they had a chance to subscribe to that theory, I mean, in their reply brief, and then again, if they wanted an argument today, and they didn't, but I do agree with your honor that had that allegation been in there, it would have been much closer to and possibly an injury in fact for Article 3 purposes. I do just want to hit on the standing issue, one of the cases and sort of lines of argument that my friends on the other side raised in their reply brief and discussed a little bit today, trying to distinguish Linda RS and the leak case based upon their having arisen in the criminal context. And it is true that in Linda RS, there are some statements talking about the unique role of criminal enforcement and the like. And I think those do provide words of caution when trying to assess, for example, the unique role of prosecutorial discretion in questions of causation and foreseeability. But again, as plaintiffs have styled their injury in their reply brief, and again, today, this claim fails on standing grounds for a much more elemental reason that there is no injury in fact, in the first place. And actually, I think leak is the best case for that. And we discussed it at length in our brief. But just to recap a little bit, the majority in case after there were beatings alleged by prison inmates, and they tried to sue the prison higher ups who interfered with the subsequent prosecution of the guards, the court said that the injury, in fact, was the beatings. And the dissent, there was a three justice dissent that said, no, no, no, the injury is not the beatings, not the first order harm, but sort of the second order a constitutional violation itself, this constitutional violation simpliciter that occurred after the fact. And of course, that's the dissent position. And at reply brief, page three of their reply brief, plaintiffs in this case stake their claim on the dissent position. And of course, that was rejected. They also do cite some cases in their reply brief, lower court cases that they claim stand for the proposition that discrimination simpliciter of the sort that they outline in their reply brief. And again, an argument today can be an injury. In fact, those cases don't stand for that proposition. Those cases say, excuse me, that a litigant has standing to challenge discrimination that impairs the litigants ability either to compete on equal footing for some tangible concrete benefit, or to avoid on footing some tangible concrete harm. And they raised the Tartikoff case from this court. And that's of a piece with that principle, because there was not discrimination just in the ether that was found potentially actionable. It was discrimination that impaired the plaintiff's ability to overcome certain zoning laws and build the type of structure. I think it was an apartment complex or the like that they wanted to build. And none of the cases that plaintiff side, including the Tartikoff case, suggest that the litigants there would have had standing to challenge discrimination, impairing any hypothetical subsequent investigation into the benefit denial or harm infliction. But that of course, is exactly the challenge that plaintiffs advance in this appeal. And I haven't- Can you talk a little bit about whether or not LEAK stands for a proposition that a plaintiff might have an actionable claim if there's some sort of interference with the plaintiff's ability to gather evidence to bring charges against somebody else? Well, if your honor is referring to the sentence in LEAK, referencing sort of a unique provision in South Carolina law, which was the state law in that case, that essentially gave plaintiffs a right to see- that afforded plaintiffs a state law interest in seeking the conviction of someone else. Yeah, I think that could be a different case if plaintiffs here had pointed to an analogous provision of New York law. I have to say, I'm not aware of one. Plaintiffs have not pointed one out. But sure, I think if an interest was created, that would make the complexion of this case a lot different if they had something concrete or even closer to concrete to point to. But again, as plaintiffs, to their credit, have been very candid in saying again and in fact, under Article 3. Now, of course, state courts are open. New York state courts are open for business to hear 1983 cases. They don't have the Article 3 limitations, although they do have their own standing rules. Plaintiffs could have brought this case, assuming no other applicable defense is applied in state court. And this identical issue, insofar as it arises under Article 3 as such, wouldn't have been a problem. But they brought it in federal court, and as such, Article 3 applies, and there's no standing for the reasons we've been discussing today. So unless there are any further questions, we would ask that the judgment be vacated and remanded with instructions to dismiss for lack of subject matter jurisdiction, in particular for lack of standing. Thank you, Your Honors. Thank you, counsel. We'll take the case under advisement. The remaining two cases on the calendar for today are on submission. So that concludes our business for today. I'll ask the courtroom deputy to adjourn. Court is adjourned. Thank you.